IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHN DOE** | * | |
|     Plaintiff | * | Civil Action No.: JKB-14-3853 |
| v. | * | |
| **SALISBURY UNIVERSITY, et. al.,** | * | |
|     **Defendants** | * | |

**PLAINTIFF'S BRIEF REQUESTED BY THIS COURT IN DOCKET 12**

Defendants' unlawful conduct should be enjoined because: (a) Plaintiff John Doe ("John Doe") never sexually assaulted anyone; (b) his claims are highly likely to succeed because Defendant Salisbury University ("SU") does not have jurisdiction; (c) he will suffer irreparable harm if Defendants are not enjoined because their actions are unfairly and inherently stigmatizing; (d) the balance of equities tips in John Doe's favor as neither he nor Jane Doe is still an SU student, and SU closed its investigation of the matter two years ago; and (e) an injunction is in the public interest as this matter reflects an abuse of public authority[1].

**A.** **John Doe will be irreparably harmed if Defendants' unlawful action is not enjoined.**

Defendants' retaliation and false sexual assault allegations have inflicted irreparable harm on John Doe. *See generally, Docket 5,* pgs. 11, 14-5. This retaliation involves a letter SU's President sent to John Doe which falsely alleges SU determined John Doe sexually assaulted a female SU student in 2013. *Docket 1-2,* p.1 (containing SU President's letter). This allegation is false because SU's disciplinary panel <u>rejected</u> allegations that John Doe had sexual intercourse with this female student in 2013. *See, Exhibit 1,* ¶1 (containing John Doe's Supplemental Affidavit). Instead, SU's disciplinary panel recommended John Doe be disciplined for accepting the female student's offer to kiss and touch her during an off-campus party in 2013. *Exhibit 1,*¶2.

---

[1] *See generally, Winter v. Natural Res. Council, Inc.,* 555 U.S. 7, 19-20 (2008).

The SU President's letter provides a causal link establishing Defendants' retaliation against John Doe for his Title IX complaint. *Id.,* ¶¶ ¶¶20-22, 62-65. John Doe's Title IX complaint maintained SU engaged in gender discrimination in part because: (a) SU's Policies only prohibit <u>non-consensual</u> physical contact between students; (b) the witnesses who observed the female student's interaction with John Doe testified that she initiated all contact with John Doe; and (c) SU disciplined John Doe even though the female student involved provided no oral or written testimony to the disciplinary panel. *Id.,* ¶3.

If Defendants' conduct in this action is not enjoined, John Doe will once again face gender discrimination. *Id.,* ¶4. This is because John Doe has no idea how to locate Jane Doe to substantiate his innocence since she left SU in 2013. *Id.* If John Doe were forced to participate in Defendants' unlawful disciplinary proceeding, he would detail how he and Jane Doe talked and danced together at some parties on May 5, 2012. *Id.,* ¶4. Then, as the evening progressed, John Doe would explain how Jane Doe started kissing him and suggested they go back to John Doe's on-campus apartment. *Id.* John Doe would point Defendants to video footage SU police officers obtained showing Jane Doe voluntarily accompanying John Doe to his apartment. *Id.* John Doe would also detail how after spending about two or three hours in the apartment - during which time neither Jane Doe nor John Doe consumed any alcohol - Jane Doe and John Doe engaged in consensual sexual intercourse. *Id.* When Jane Doe and John Doe woke up the next morning, Jane Doe informed John Doe that she was a virgin and she was embarrassed by her actions. *Id.* But, Jane Doe never suggested to John Doe that their sexual encounter was anything but consensual. *Id.* Instead, Jane Doe and Jane Doe took a shower together before Jane Doe left to return to her dorm. *Id.* About a week later, at the suggestion of SU police, John Doe and Jane Doe met to discuss their sexual encounter. *Id.* During this meeting, Jane Doe and John

Doe again discussed their respective embarrassment over engaging in consensual sex when they had been drinking and agreed to put the incident behind them. *Id.*

The facts strongly suggest that unless Defendants are enjoined they will once again violate SU Policies, ignore John Doe's innocence, and falsely brand John Doe a sexual offender. Unfortunately, recent articles in *The Economist,* the *New York Times,* and *Slate* prove John Doe is not alone in having his rights violated after engaging in consensual physical encounters with fellow college students. These articles highlight concerns that universities are currently engaging in the routine violations of male students' due process rights in cases involving alleged sexual assault[2]. Since these concerns are evidenced here,[3] a Temporary Restraining Order is the only way to stop the University from proceeding with an investigation that is not only unwarranted but is inherently defamatory. The temporary restraining order should be granted because, if it is not, the University will continue a groundless, explicitly retaliatory investigation whose very existence is a source of undeserved stigma – stigma that cannot be redressed through a subsequent award of damages. Conversely, granting the temporary restraining order will hardly prejudice the University, as the University was perfectly happy to allow the matter to be closed and inactive for almost 3 years, and the University no longer has any legitimate interest in the propriety of John Doe's conduct, as John Doe is no longer a student and resides 3,000 miles from campus.

**B.     The balance of equities tip in John Doe's favor in part because an injunction is in the public interest.**

In *Docket 5,* John Doe satisfies *Winter*'s requirements that: (a) the balance of equities tip in John Doe's favor; and (b) that an injunction is in the public interest. *See generally, Docket 5,*

---

[2] *See generally, Exhibit 2* (containing *Economist* article); *Exhibit 3,* (containing *New York Times* article); and *Exhibit 4* (containing *Slate* article)
[3] *See generally, Docket 1,* pgs. 9-16, ¶¶36-81 (detailing Defendants' violations of John Doe's rights).

pgs. 15-17 (discussing John Doe's satisfaction of requirements in *Winter,* 555 U.S. 7). Defendants' unlawful acts should also be enjoined because their actions are similar to those enjoined by a Maryland State Court in a case involving a Baltimore City football coach named Lawrence Smith. *See generally, Exhibits* 5-6 (containing court filings related to *Smith v. Baltimore Cty. Pub. Schools*). In *Smith,* the court granted injunctive relief in part because the school board's handling of the football coach was not authorized by the school board's policies. *Id.* Here, Defendants engage in similar unlawful actions because they lack jurisdiction to discipline John Doe. Moreover, enjoining Defendants actions does not limit the public's ability to evaluate John Doe's consensual encounter with Jane Doe. This is because Salisbury police officers and/or prosecutors possess the jurisdictional authority to conduct this evaluation if they decide to do so. Therefore, Defendants' should be enjoined.

C. **John Doe's Complaint evidences a strong likelihood of success on the merits.**

John Doe's complaint is likely to succeed because Defendants' jurisdictional authority to discipline John Doe terminated when he ended his enrollment at SU in May of 2014. *Docket 1,* p.6., ¶¶23-25. This termination occurred in part because:

a. SU's Code of Conduct ("COC") explicitly states its "jurisdiction" is limited to current SU "students." *Id.,* p.6, ¶23.

b. SU's Policy on Sexual Misconduct ("Policy") only allows SU to take disciplinary action against current SU "students" or "applicants for admission to University programs. . . ." *Id.,* p.6, ¶25.

c. Even if John Doe were deemed an "applicant for admission" to SU, no disciplinary action can be taken against John Doe because the Policy states "Disciplinary Penalties" are "assessed according to" the COC which only applies to "students." *Id.,* p.6, ¶25.

d. The United States Department of Education's Office of Civil Rights acknowledged universities lack "jurisdiction" to discipline ex-students for allegedly committing sexual assaults. *Id.,* ¶26.

Defendants' lack of jurisdiction results in the following: (1) Defendants' disciplinary proceeding violates SU's actual or quasi contracts with Johns Doe;[4] (2) Defendants violate 42 USC §1983 by unlawfully cloaking themselves in a "color of law" while violating John Doe's Fourth, Fifth, and/or Fourteenth Amendment Rights;[5] and/or (3) John Doe's declaratory judgment claim is likely to succeed because of Defendants aforementioned unlawful actions.[6]

Simply put, if SU truly believed disciplinary proceedings were warranted against John Doe, SU would have pursued this discipline in 2012 when SU police officers investigated John Doe's consensual encounter with Jane Doe. *Docket 1,* p.5-6, ¶21. Yet, SU took no action against John Doe until one month after SU's President rejected John Doe's complaint regarding SU's violations of his rights as a male SU student under Title IX. *Id.* In doing so, Defendants used the pretext of 2 ½ year old allegations to retaliate against John Doe. *Id.,* ¶¶20-22, 62-65 (discussing facts establishing SU's Title IX retaliation against John Doe). As a result, John Doe requests this Court find his contract, promissory estoppel, declaratory relief, and/or 42 USC §1983 claims evidence a strong likelihood of success.

## **CONCLUSION**

Based on the facts detailed above, John Doe respectfully requests this Court enter a Temporary Restraining Order that John Doe requests in Docket 5.

---

[4] *See generally, Docket 5,* p.6-7 (discussing why Defendants' disciplinary action against John Doe violates SU's contractual obligations to John Doe under the Maryland Court of Appeals decision in *RRC Northeast, LLC v. BAA Maryland, Inc.,* 413 Md. 638 (2010)); *Id.,* p.8 (discussing why John Doe establishes a valid promissory estoppel claim against Defendants under the Maryland Court of Appeals decision in *Pavel Entes. v. A.S. Johnson Co.,* 342 Md. 143, 167 (1996); *Id.,* p.8-9 (discussing the strong probability John Doe's injunctive relief based on contract and/or promissory estoppel in light of the Maryland Court of Appeals decision in *Stern v. Bd. Of Regents,* 380 Md. 691 (2004).)

[5] *See generally, Docket 5,* p.10-13 discussing: (a) law review articles addressing how universities are violating due process and Fourteenth Amendment rights of male college students while investigating allegations of sexual assault; (b) how SU is violating John Doe's due process and Fourteenth Amendment rights articulated in decisions such as: (i) *Goss v. Lopez,* 419 U.S. 565 (1975); (ii) *Dixon v Ala. State Bd. Of Educ.*, 294 F.2d 150 (5th Cir. 1961); (iii) *Gaspar v. Bruton*, 513 F.2d 843 (10th Cir. 1975); (iv) *Gorman v. Univ. of R.I.*, 837 F.2d 7, 12 (1st Cir. 1988).

[6] *See generally, Docket 5,* p.14 (detailing why John Doe presents facts sufficient to establish a right to declaratory relief under the Fourth Circuit's decision in *White v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 913 F.2d 165 (4th Cir. 1990)).

Respectfully Submitted,

_____/s/_____
ROBIN R. COCKEY, Federal Bar No. 02657
LAURA E. HAY, Federal Bar No. 29403
Cockey, Brennan & Maloney, PC
313 Lemmon Hill Lane
Salisbury, MD 21801
410-546-1750
Fax: 410-546-1811

_____/s/_____
ERIC ROSENBERG, Federal Bar No. 069958
Rosenberg & Ball Co. LPA
395 North Pearl Street
Granville, Ohio 43023
Phone: 888.680.6797
Fax 866.498.0811 fax