# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOHN DOE | * |
| | * |
|    Plaintiff | * |
| | * |
| v. | *    CIVIL NO. JKB-14-3853 |
| | * |
| SALISBURY UNIVERSITY, *et al*. | * |
| | * |
|    Defendants | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM**

This action was brought by John Doe ("Plaintiff") against Salisbury University ("SU"), Humberto Aristizabal,[1] and John Doe Employees of SU (collectively named "Defendants") alleging violations of Title IX, violations of the due process clause, breach of contract, liability under the doctrine of promissory estoppel, and seeking declaratory and injunctive relief. (ECF No. 1.) Now pending before the Court is Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (ECF No. 25.) The issues have been briefed (ECF Nos. 25, 35, 36) and no hearing is required, Local Rule 105.6. For the reasons explained below, Defendants' motion to dismiss will be GRANTED IN PART AND DENIED IN PART.

---

[1] SU's Title IX Coordinator, Fair Practices Officer, and Associate Vice President of Institutional Equity. (ECF No. 1-4.)

[2] Defendants' motion to dismiss also purports to seek dismissal "pursuant to [Federal Rule of Civil Procedure] 12(b)(5)." (ECF No. 25-1 at 7.) Rule 12(b)(5) enables dismissal for "insufficient service of process," and yet Defendants do not contend that they were improperly served by Plaintiff. The Court will therefore focus its review on Defendants' motion to dismiss pursuant to Rule 12(b)(6).

*I. Background*[3]

SU is a public university and a constituent of the University System of Maryland. (ECF No. 1 ¶ 3.) Plaintiff was enrolled as a student at SU from August 2011 until approximately May 22, 2014. (*Id.* ¶ 2.)

In October 2013, while Plaintiff was enrolled at SU, the University "launched an investigation into whether Plaintiff should be disciplined for conduct unrelated to the investigation and/or discipline Plaintiff seeks to enjoin in this action." (*Id.* ¶ 11.) As a result of this 2013 investigation, Plaintiff was suspended from SU effective May 22, 2014, and Plaintiff was informed that he would "be eligible to return for the Spring 2015 semester upon successful completion of all sanctions," (the "2013 Suspension"). (*Id.* ¶ 13.) Plaintiff filed complaints with SU on April 28, May 2, and September 22, 2014, alleging that SU and its employees had discriminated against Plaintiff in the 2013 investigation and disciplinary action based on Plaintiff's gender, in violation of Title IX. (*Id.* ¶ 14.) SU's President rejected Plaintiff's complaints as meritless on October 29, 2014. (*Id.* ¶ 15.) Plaintiff continued to serve his suspension while challenging SU's disciplinary process.

To return as a student following the 2013 Suspension, Plaintiff was required to "apply for readmission once [he had] met the minimum criteria as outlined in [SU's] dismissal policy and/or their notice of suspension." (*Id.* ¶ 16.) In October 2014, Plaintiff completed his application for readmission. (*Id.* ¶ 17.) However, on November 20, 2014, SU informed Plaintiff that he must first complete a "reflection paper" regarding the conduct that gave rise to the 2013 Suspension, and then resubmit his application for readmission. (*Id.*) Plaintiff submitted the

---

[3] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

2

required reflection paper in November 2014, but never submitted a new readmission application. (*Id.* ¶ 18.)

On November 21, 2014, Defendant Aristizabal notified Plaintiff that SU's Office of Institutional Equity had recently learned about a previously uninvestigated sexual assault allegation from 2012 against Plaintiff (the "2012 Incident"). (ECF No. 1-4.) Aristizabal's letter explained that SU would now be "investigating these recently learned 2012 Allegations of sexual assault, rape, and other related claims." (*Id.*) If the allegations are proven true, Plaintiff will be found "in violation of the University System of Maryland ("USM") Policy on Sexual Misconduct, USM BOR V1-1.60, as well as the Salisbury University Policy and Procedures and in [sic] the Student Code of Conduct, Policies and Code." (*Id.*) On November 25, Aristizabal mailed a follow-up letter "to provide [Plaintiff] with the details of the allegations made against [Plaintiff] in connection with" the 2012 Incident, including "a redacted copy of the Salisbury University Police Department report concerning this matter." (ECF No. 1-5.) Aristizabal's second letter also stated as follows: "You are requested to submit a written response to the allegations within ten (10) University business days, . . . ." (*Id.*) That same day—November 25, 2014—Plaintiff "informed SU . . . that he would not be applying for readmission to SU." (ECF No. 1 ¶ 18.)

Plaintiff filed this action on December 10, 2014. (ECF No. 1.) Defendants filed a motion to dismiss on January 7, 2015. (ECF No. 25.) Plaintiff filed a response in opposition on January 26 (ECF No. 35), and Defendants filed a reply on February 12 (ECF No. 36).

## II. *Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555.

## III. Analysis

Plaintiff's complaint (ECF No. 1) alleges eight claims: Count I[4] alleges "[h]ostile environment sexual harassment" in violation of Title IX; Count II alleges deliberate indifference in violation of Title IX; Count III alleges retaliation in violation of Title IX; Count IV alleges violations of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, brought under 42 U.S.C. § 1983; Count V alleges breach of contract; Count VI seeks liability under the doctrine of promissory estoppel; Count VII seeks declaratory relief; and Count VIII seeks injunctive relief.  All eight claims were originally brought against SU, Aristizabal (individually and in his official capacity as SU's Title IX Coordinator), and John Doe Employees of SU (individually and in their official capacities as SU employees).

---

[4] In the Complaint, Plaintiff mislabeled Count I as "Count II."  (ECF No. 1 at 9.)  In Plaintiff's response in opposition, Plaintiff acknowledges the error and notes that the sexual harassment claim "should have been identified at Court [sic] I."  (ECF No. 35 at 16 n.23.)

As a threshold matter, Plaintiff abandoned many of these claims in Plaintiff's response in opposition to Defendants' motion to dismiss. (*See* ECF No. 35.)

### A. *Plaintiff's Abandoned Claims*

Plaintiff has now abandoned the following claims: (1) all Title IX claims (Counts I through III) against Aristizabal and John Doe Employees of SU (*id.* at 11 n.20); (2) that portion of Count IV alleging a § 1983 claim against SU (*id.* at 30 n.36); (3) that portion of Count IV alleging § 1983 claims for violation of the Fourth and Fifth Amendments against all defendants (*id.* at 31 n.38); (4) that portion of Count V alleging a breach of contract claim against defendants[5] in their individual capacities (*id.* at 25 n.29); and (5) Count VI alleging a claim for promissory estoppel in its entirety[6] (*id.*).

The Court is left to consider these remaining claims: (1) Count I alleging sexual harassment in violation of Title IX against SU; (2) Count II alleging deliberate indifference in violation of Title IX against SU; (3) Count III alleging retaliation in violation of Title IX against SU; (4) Count IV alleging deprivation of due process, brought under § 1983 against Aristizabal and John Doe Employees of SU in their individual and professional capacities; (5) Count V alleging breach of contract against SU, as well as Aristizabal and John Doe Employees of SU in their professional capacities; (6) Count VII seeking declaratory relief; and (7) Count VIII seeking injunctive relief.

---

[5] While Plaintiff explicitly abandoned his breach of contract claim against *Aristizabal* in his individual capacity, Plaintiff fails to address the continuing viability of this claim against *John Doe Employees of SU* in their individual capacities. That said, Plaintiff's response in opposition contends only that "SU violated its contract with John Doe . . . ." (ECF No. 35-1 at 25.) The Court interprets Plaintiff's decision to focus exclusively on the alleged contract violation by SU to imply that the Count V claim against John Doe Employees of SU in their individual capacities was abandoned.

[6] The Court finds similar problems in Plaintiff's abandonment of his Count VI claims for promissory estoppel. While Plaintiff explicitly abandoned his promissory estoppel claims against Aristizabal in his individual capacity and against SU, Plaintiff fails to address the continuing viability of his claims against Aristizabal in his professional capacity, and against John Doe Employees of SU in their individual or professional capacities. Still, Plaintiff's response in opposition does not address Defendants' motion to dismiss Count VI. The Court interprets Plaintiff's failure to defend his promissory estoppel claim to imply that *all Count VI claims* were abandoned.

B. *Title IX*

Title IX provides that:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C.A. § 1681(a) (West 2010). The Supreme Court has held that Title IX's ban on "discrimination" encompasses bans on sexual harassment and retaliation, and that private rights of action are implied for both forms of discrimination under the statute. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 75-76 (1992) (discussing the implied right of action under Title IX for sexual harassment); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-84 (2005) (discussing the implied right of action under Title IX for retaliation). The Fourth Circuit has advised that "Title VII, and the judicial interpretations of it, provide a persuasive body of standards to which we may look in shaping the contours of a private right of action under Title IX." *Preston v. Va. ex. rel. New River Cmty. Coll.*, 31 F.3d 203, 207 (4th Cir. 1994).

*1. Count I: Sexual Harassment*

In Count I, Plaintiff alleges "[h]ostile environment sexual harassment" in violation of Title IX. (ECF No. 1 ¶¶ 36-53.) To establish a claim of sexual harassment, "a plaintiff must show that (1) [he] was a student at an educational institution receiving federal funds, (2) [he] was subjected to harassment based on [his] sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007).

The Supreme Court has described *harassment* as "discriminatory intimidation, ridicule, and insult." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank,*

6

*FSB v. Vinson*, 477 U.S. 57, 65 (1986)) (assessing harassment in the Title VII context). The Fourth Circuit has articulated a similar standard in the context of Title IX claims, stating that "[s]exual harassment occurs when the victim is subjected to *sex-specific language* that is aimed to humiliate, ridicule, or intimidate." *Jennings*, 482 F.3d at 695 (emphasis added). The EEOC defines *harassment* as "[u]nwelcome sexual advances, requests for sexual favors, and other *verbal or physical conduct of a sexual nature* . . . ." 29 C.F.R. § 1604.11(a) (2015) (emphasis added). Taken together, a claim of sexual harassment must allege sex-specific conduct aimed to humiliate, ridicule, intimidate, or insult.

Indeed, each case relied upon by Plaintiff involved this requisite sex-specific verbal or physical conduct. *See Jennings*, 482 F.3d at 695-96 (finding sufficient evidence of sexual harassment to survive a motion for summary judgment where a women's college soccer coach—the defendant—regularly requested that his players recount their sexual exploits, and made sexual comments about his players' bodies); *Doe v. Bd. of Educ. of Prince George's Cnty.*, 982 F. Supp. 2d 641, 651 (D. Md. 2013) (finding that a reasonable jury could infer sexual harassment where plaintiff's elementary school classmate "directed humping movements at" plaintiff in class, "exposed himself to" plaintiff in class, called plaintiff gay, and "made sexual remarks to [plaintiff] in the bathroom"). Plaintiff's complaint does not allege comparable sex-specific conduct, aimed to humiliate, ridicule, intimidate, or insult.

Plaintiff also relies on *Rouse v. Duke University*, 869 F. Supp. 2d 674 (M.D.N.C. 2012), which involved facts that, arguably, more closely resemble those alleged in the instant action. In *Rouse*, a white female student reported to school officials that she had been raped by a black man at a campus fraternity party. *Id.* at 677. One school official "issued a public statement downplaying the allegation of rape and suggested that [the student] was to blame for her own

rape. This interview was broadcast nationwide with numerous follow-up media reports repeating [the school official's] false implied statements." *Id.* On these alleged facts, the district court found the student's sexual harassment complaint sufficient to survive a motion to dismiss, where the student had been subject to "harassment and humiliation on campus as a result of being a white woman who accused a black man of rape," and where school officials "did nothing to help or reduce the campus atmosphere against her, and in fact made it worse by false accusations that she was complicit in her own rape." *Id.* at 684-85. The decision in *Rouse* strains the definition of sexual harassment, discussed *supra*. With identical facts, this Court's judgment might or might not align with the analysis and holding in *Rouse*. Regardless, though, Plaintiff's case does not fall even within the *Rouse* court's broad understanding of harassment. Plaintiff *has not* alleged that he suffered humiliation on campus, *has not* alleged that school officials ignored a hostile campus atmosphere, and *has not* alleged that school officials shamed Plaintiff by discussing the 2012 Incident in a nationally distributed publication or during a nationally broadcasted interview.

Plaintiff's complaint does not plausibly state a claim of sexual harassment. (*See generally* ECF No. 1 ¶¶ 40-51.) Plaintiff's allegations of "sexual harassment" reduce down to two fundamental arguments: that SU lacks authority to discipline a non-student, and that SU's sexual assault policies are applied in a manner that discriminates against men. (*Id.*) These allegations may present *some* form of sex discrimination in violation of Title IX,[7] but they do not involve the sex-specific language or conduct designed to humiliate, ridicule, intimidate, or

---

[7] Plaintiff's allegations might pass muster under a theory that SU's decision to investigate and discipline Plaintiff was motivated by Plaintiff's gender. *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 714-16 (2d Cir. 1994) (finding that Title IX bars such discipline where gender is a motivating factor by analogy to Title VII case law, and describing two categories of such claims: "erroneous outcome" and "selective enforcement"); *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638-41 (6th Cir. 2003) (citing favorably to *Yusuf*); *Brzonkala v. Va. Polytechnic Inst. & State Univ.*, 132 F.3d 949, 961-62 (4th Cir. 1997) (citing favorably to *Yusuf*), *rev'd en banc on other grounds*, 169 F.3d 820 (4th Cir. 1999). However, such a claim is not currently before the Court.

insult, necessary to state a claim for harassment. The fact that Plaintiff's allegations of harassment relate to an investigation about Plaintiff's involvement in an alleged sexual assault does not in and of itself qualify such disciplinary actions as verbal or physical conduct *of a sexual nature*.

For these reasons, the Court will grant Defendants' motion to dismiss Count I.

### 2. Count II: Deliberate Indifference

In Count II, Plaintiff alleges that "Defendants acted with deliberately indifferent [sic] to the unlawful, irresponsible, improper, and sexually biased manner in investigating and/or disciplining" Plaintiff. (ECF No. 1 ¶ 55.) A finding of deliberate indifference is necessary to impute liability against an institution under Title IX. *See Jennings*, 482 F.3d at 700 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). That said, *deliberate indifference* is a theory of liability, not a standalone violation under Title IX. *See Gebser*, 524 U.S. at 290-91 (holding that *deliberate indifference* is the standard for imputing liability to an institution under Title IX); *Baynard v. Malone*, 268 F.3d 228, 240 (4th Cir. 2001) (Michael, J., dissenting) (citing *Gebser*, 524 U.S. at 286) (discussing the "deliberate indifference theory of liability recognized by the Supreme Court"). Plaintiff may seek to show that Defendants acted with deliberate indifference in support of Plaintiff's remaining Title IX claim, but deliberate indifference is not properly raised as a separate count in Plaintiff's complaint. Thus, Defendants' motion to dismiss Count II will be granted.

### 3. Count III: Retaliation

In Count III, Plaintiff alleges that Defendants launched their investigation into the 2012 Incident in retaliation for Plaintiff's prior Title IX complaints related to the 2013 Suspension. The Supreme Court has defined retaliation under Title IX as follows: "when a funding recipient

retaliates against a person *because* he complains of sex discrimination, this constitutes intentional 'discrimination' 'on the basis of sex,' in violation of Title IX." *Jackson*, 544 U.S. at 174. A prima facie retaliation claim must show (1) engagement in a protected activity; (2) an adverse action; and (3) a causal connection between the protected activity and the adverse action. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (applying this retaliation framework to Title VII claims).[8] Here, Plaintiff has satisfied his pleading burden and survives Defendants' motion to dismiss.

Plaintiff alleges that he engaged in a protected activity when he filed Title IX complaints against the school for its handling of the 2013 investigation and disciplinary action. (ECF No. 1 ¶¶ 14-15, 62-63.) Plaintiff also alleges that he suffered an adverse action when Defendants began to investigate the 2012 Incident. (*Id.* ¶¶ 19-22, 64.) And on prong three, Plaintiff presents sufficient factual allegations to raise a plausible inference that Defendants chose to investigate the 2012 Incident because of Plaintiff's prior Title IX complaints.[9] Such factual allegations include: Defendants had been aware of the 2012 Incident since May 2012, but the Office of Institutional Equity did not investigate until soon after Plaintiff filed his Title IX complaints (*Id.*

---

[8] As stated previously, the Court may look to judicial interpretations of Title VII "in shaping the contours of a private right of action under Title IX." *Preston*, 31 F.3d at 207. Further, since the Supreme Court decided *Jackson* and held that Title IX includes a private right of action for retaliation, 544 U.S. at 173-84, several United States courts of appeals have applied a Title VII framework to Title IX retaliation claims. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686, F.3d 378, 388 (7th Cir. 2012); *Emeldi v. Univ. of Or.*, 698 F.3d 715, 724 (9th Cir. 2012); *Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 91-92 (2d Cir. 2011).

[9] The parties have raised questions about what causation standard applies in the context of Title IX retaliation claims. In *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013), the Supreme Court held that a plaintiff must show but-for causation to prove retaliation under Title VII. But the parties agree that the Supreme Court did not extend this holding to Title IX claims. (*See* ECF No. 35-1 at 13-14; ECF No. 36 at 5-8.) Under Title IX, the alleged adverse action must be *because* the plaintiff engaged in a protected activity. *Jackson*, 544 U.S. at 174. The Fourth Circuit has yet to interpret how to apply this "because of" causation standard under Title IX, but the Eleventh and Ninth Circuits have held that a Plaintiff's burden is to show merely that the alleged protected activity and adverse action were "not completely unrelated." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 869 (9th Cir. 2014); *Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 911 (11th Cir. 2013) (declaring that Plaintiff need only show that the actions "were not wholly unrelated" to satisfy the causation requirement). Regardless, the Court need not decide precisely which causation standard to apply at this early stage. Plaintiff has made sufficient factual pleadings to survive a motion to dismiss under any proposed causation standard.

¶21), Defendants launched their investigation without any input from the alleged victim of the 2012 Incident (*Id.* ¶ 20), and no criminal charges were ever filed against Plaintiff for the 2012 Incident (*Id.* ¶ 22). The Court does not decide today whether these factual allegations, if proven true, would support a reasonable jury's finding of retaliation by a preponderance of the evidence, the standard on summary judgment. But this is not summary judgment. It is a motion to dismiss, and Plaintiff has alleged sufficient facts to state a plausible claim to relief. Thus Defendants' motion to dismiss Count III will be denied.

### C. Count IV: Denial of Due Process

In Count IV, Plaintiff asserts a claim under 42 U.S.C. § 1983 that he has been denied due process in violation of the Fourteenth Amendment of the U.S. Constitution. (*See id.* ¶¶ 74-78.) Plaintiff does not specify whether he claims a violation of procedural or substantive due process. That said, Plaintiff's response in opposition to the instant motion relies solely on case law pertaining to procedural due process, and so the Court infers that Plaintiff *did not* intend to raise a substantive due process claim.[10]

Defendants contend that they are entitled to qualified immunity, and therefore that Count IV should be dismissed. Qualified immunity provides immunity from suit, not merely a defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). Consequently, resolution of this issue should be made "'at the earliest possible stage in litigation.'" *Id.* at 232 (citation omitted). Qualified immunity turns on two inquiries: (1) "whether the facts that a plaintiff has alleged . . .

---

[10] Plaintiff's complaint would also be insufficient as a substantive due process claim. Substantive due process "covers only state action which is 'so arbitrary and irrational, so unjustified by any circumstance or government interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'" *Sylvia Dev. Corp. v. Calvert Cnty., Md.*, 48 F.3d 810, 827 (4th Cir. 1995) (quoting *Rucker v. Harford Cnty., Md.*, 946 F.2d 278, 281 (4th Cir. 1991)). To the extent that Plaintiff intended to allege a substantive due process violation, his complaint fails to plausibly state a claim for protection under this narrow right.

or shown . . . make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.*

Plaintiff has failed to state a plausible claim for the violation of a constitutional right, and so Defendants are entitled to qualified immunity. "To establish a violation of procedural due process, plaintiffs must show that (1) they had property or a property interest (2) of which the defendant deprived them (3) without due process of law." *Sunrise Corp. of Myrtle Beach v. City of Myrtle Beach*, 420 F.3d 322, 328 (4th Cir. 2005). Plaintiff alleges that Defendants have deprived Plaintiff of his "right to a SU transcript unmarred by Defendants' unlawful investigation" (ECF No. 1 ¶ 74), his right to "be free from Defendants' investigation and/or discipline" of Plaintiff as a non-student (*id.* ¶ 75), his right to an undamaged reputation and unharmed "future educational or employment opportunities" (*id.* ¶ 76), his "right to attend another publicly funded school in Maryland" (*id.* ¶ 77), and his right "to transfer or attend a different school" (*id.* ¶ 78). For purposes of assessing Defendants' motion to dismiss, the Court assumes without deciding that Plaintiff has alleged deprivations that satisfy prongs one and two of the Court's procedural due process analysis, and so the Court assumes that the constitutional protections of due process apply. "Once it is determined that due process applies, the question remains what process is due." *Goss v. Lopez*, 419 U.S. 565, 577 (1975) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)) (internal quotation marks omitted). While Plaintiff may allege sufficient deprivations, his complaint stops short of a plausible claim; Plaintiff fails to allege that he suffered a constitutional deprivation *without due process of law*.

The Supreme Court has held that the due process clause requires that students be afforded at least notice of the charges they face and an opportunity to be heard. *See id.* at 581-84. This

Court has previously looked for four procedural elements to determine whether an academic disciplinary proceeding is consistent with due process:

> (1) The student must be advised, in advance of the hearing, [of] the grounds of the charges against him.
>
> (2) He is entitled to the names and a summary of the testimony of witnesses to be used against him, although he may not be necessarily entitled to be confronted by the witnesses at the hearing.
>
> (3) The student has a right to be heard in his own defense and to be present and present evidence on his behalf, although this right does not necessarily extend to the actual appearance before the ultimate legal authority to administer discipline.
>
> (4) No serious disciplinary action can be taken unless it is based upon substantial evidence.

*Sohmer v. Kinnard*, 535 F. Supp. 50, 53 (D. Md. 1982) (citing *Herman v. Univ. of S.C.*, 341 F. Supp. 226, 230-31 (D.S.C. 1971), *aff'd*, 457 F.2d 902 (4th Cir. 1972) (per curiam); *see also Keerikkattil v. Hrabowski*, Civ. No. WMN-13-2016, 2013 WL 5368744, at *6 (D. Md. Sept. 23, 2013) (looking to the same four procedural elements).

Defendants' investigation of the 2012 Incident is still in its infancy. No disciplinary action has been initiated, and therefore no hearing has been scheduled. Plaintiff has, however, received notice of the investigation, and of the potential charges against him. (ECF No. 1 ¶ 19.) And Plaintiff has already been afforded the opportunity to respond in writing to the allegations. (*Id.* ¶ 29.) At this early stage, Plaintiff has received adequate process under the Constitution. Thus, Defendants' motion to dismiss Count IV will be granted.

### D. Counts V and VII: Breach of Contract & Plaintiff's Request for Declaratory Relief

In Counts V and VII, Plaintiff alleges that Defendants have no jurisdiction to investigate and/or discipline Plaintiff now that he has withdrawn from SU. In Count V, Plaintiff alleges that Defendants breached a contract by initiating the challenged investigation and pursuing a possible

disciplinary action against a non-student. In Count VII, Plaintiff seeks declaratory relief, asking the Court to order that SU lacks authority to bring such an investigation and disciplinary action. In essence, Plaintiff asks the Court to hold that the moment a student withdraws or graduates from a school, that school is instantly stripped of authority over anything relating to the former student.

Schools hold an implied power to control school records and to revoke credentials conferred upon students (e.g., degrees, credits, etc.), where such actions are in response to a former student's conduct that occurred during the student's enrollment, and as long as the school acts with good cause and after due process. A former student's withdrawal or graduation from school does not end or obviate the relationship, nor does it permanently vest a former student's status with the school. When a school confers credentials, the school places its imprimatur on a student; degrees and credits are a school's implicit endorsement of someone's academic qualifications and personal character, whether they be a current or former student. As a result, schools are empowered to revise academic records, or to revoke credentials, in a scenario where such presumed qualifications and character traits are later proven false. In the broadest sense, Maryland law supports the Court's finding that SU has such implied powers by mandating that the President of SU "[b]e responsible and accountable to the Board [of Regents] for the discipline and successful conduct of the institution . . . ." Md. Code Ann., Educ. § 12-109(d)(2) (LexisNexis 2014).

Under Plaintiff's theory—where a school would lack authority to investigate or discipline a former student for conduct that allegedly occurred while the former student was enrolled—it would be *impossible* for the school to ever revoke a graduate's degree. But courts have held that schools hold inherent authority to revoke degrees based on academic or disciplinary infractions

that occurred while a former student was enrolled, as long as the school could show good cause and after due process. *See Goodreau v. Rector and Visitors of Univ. of Va.*, 116 F. Supp. 2d 694, 702-03 (W.D. Va. 2000) (finding that the University of Virginia held an implied power to revoke a graduate's degree where the graduate had stolen money during the time he was enrolled at the school); *Waliga v. Bd. of Trs. of Kent State Univ.*, 488 N.E. 2d 850, 850, 852 (Ohio 1986) (finding that Kent State University had "inherent authority to revoke an improperly awarded degree" where the school discovered discrepancies in a graduate's academic records). Plaintiff does not cite to any statutory or contractual provision that expressly defeats SU's implied power to control its own records. Therefore, the Court holds that SU is well within its authority to investigate allegations of disciplinary infractions that occurred on campus, and while Plaintiff was enrolled as a student.[11]

Plaintiff also alleges that Defendants plan to apply policies adopted in 2014 when investigating the 2012 Incident, and that retroactive application of new policies is unlawful and constitutes a breach of contract. Plaintiff relies on the Supreme Court's direction that "[r]etroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) (considering the retroactive application of a wage-index rule issued by the Secretary of Health and Human Services). Plaintiff fails to cite, and the Court could not find, any legal authority to suggest that the holding in *Bowen* limits a state school's authority to amend and retroactively apply informal disciplinary policies. As a result, *Bowen* and its progeny do not squarely preclude SU's potential application

---

[11] If SU subsequently decides to discipline Plaintiff for the 2012 Incident though, SU may well wield limited enforcement mechanisms. SU maintains control of Plaintiff's school records and any credentials conferred, but SU is no longer responsible for the day-to-day livelihood of Plaintiff as compared to when he was an enrolled student living on campus. Questions about enforcement are not before the Court at this time, however, and so will not be addressed unless and until they become ripe for review.

of new policies to past conduct. More importantly, Plaintiff fails to allege any facts suggesting that the school's investigation and possible disciplinary action would be handled differently under the 2014 policies, as compared with the policies in place when the 2012 Incident occurred. Plaintiff has no legal theory to support this breach of contract claim, and also fails to allege sufficient facts to plausibly claim that Plaintiff will face different treatment under the 2014 policies.

Therefore, Defendants' motion to dismiss Counts V and VII will be granted.

### E. Count VIII: Injunctive Relief

Plaintiff seeks injunctive relief in Count VIII, however a claim for injunctive relief is not a standalone cause of action. *See MCS Servs. Inc. v. Jones*, Civ. No. WMN-10-1042, 2010 WL 3895380, at *1 n.4 (D. Md. Oct. 1, 2010). The Court will construe and recast Plaintiff's Count VIII as a prayer for injunctive relief as a remedy for Plaintiff's surviving Title IX retaliation claim (Count III), rather than a standalone count.

In seeking a permanent injunction, Plaintiff must satisfy a four-factor test, to demonstrate: (1) that he "has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

At this stage, the Court is not prepared to state as a matter of law that Plaintiff cannot satisfy the requirements set out in *eBay*. Plaintiff alleges that, if Defendants move forward with their investigation and potential disciplinary action, Plaintiff's "official SU record will permanently identity [sic] [Plaintiff] as committing a sexual assault . . . ." (ECF No. 1 ¶ 34.)

Plaintiff has plausibly articulated the longstanding impact that such an investigation or disciplinary action could have on Plaintiff's life. Plaintiff could suffer "humiliation, disgrace, mental anguish, severe emotional distress, injury to reputation, past and future economic loss," etc. (*Id.* ¶ 35.) The social stigma associated with a sexual assault conviction is deservedly severe. But for that reason, if the Court finds that SU's investigation and possible disciplinary action would be somehow unlawful, money damages alone could not unring that bell.

Further, the parties have both raised compelling arguments about how a permanent injunction would affect the public interest. These arguments may eventually prove decisive in the Court's assessment of Plaintiff's request for a permanent injunction. But on this motion to dismiss, Plaintiff has alleged sufficient facts for his prayer for injunctive relief. Defendants' motion to dismiss Plaintiff's prayer for injunctive relief will be denied.

## IV. Conclusion

Accordingly, an order will issue GRANTING IN PART AND DENYING IN PART Defendants' motion to dismiss (ECF No. 25).

DATED this _2nd_ day of June, 2015.

BY THE COURT:

_/s/_
James K. Bredar
United States District Judge